Good afternoon, and may it please the Court. My name is Kiran Bari. I'm amicus to the Court in this matter. Yes, and we want to thank you for appearing pro bono as part of our pro bono representation project. Of course. Your Honors, the key elements of Mr. Singh's asylum claim are not disputed. Neither the IJ nor the government disputes his identity, the fact that he's a native citizen of India, that he is a member of the Sikh religion and a member of the Akali Dal party, that he was arrested twice as a result of that membership, and that during those detentions, he was stripped naked, beaten, tortured, and detained for days. That is the core of his claim. None of his testimony on those disputed elements go around the edges of that claim and don't cut into the core of the heart of the claim. Counsel, the immigration judge made a flat statement that he didn't believe the guy had ever even been arrested. Did he have any basis for that? The only basis for his not believing that he was arrested were the other inconsistencies that he cited that are not supported in the record or are not legitimate grounds. There were documents, weren't there, that didn't conform what he said? There's one medical note, one medical record that documents medical treatment that Mr. Singh does not remember receiving. But when confronted with that inconsistency, Mr. Singh said, if it had been in my heart that I had received the treatment, I would have told you, but I simply don't remember. That was the essence of his testimony. And the documents about the arrest were not prepared at the time of the actual arrest, as I understand it? That's true. And he admits in the And they were not authentic? And they were not signed by the magistrate, and therefore they were not exactly as he represented either, were they? Actually, those were the judge's words, that they were not authentic and that they were not signed by the magistrate at the time that they said they were. And those were not Mr. Singh's words. Well, I understand, but the judge had to look at them, and so he was the one reviewing the warrants. That's true. But all that Mr. Singh admitted to was that the documents were not prepared contemporaneously with the events, that they were prepared after the fact, and he admitted to that. It did not – he never said that they weren't – that they documented events that never – that did not occur. In any case, whether or not a warrant issued in this case is not central to the heart of the claim. The important testimony is that he was arrested. Well, I guess my worry is, and I guess I'm going to the same issue, my worry is that we here have a credibility finding, and the credibility finding is made on certain issues. Now, what he alleges, if he has no credibility, is not accepted. That's true. So that's the worry that I have with what you started out with. We're really at a credibility finding here. That's true. And what you're really fighting is, what did the I.J. do in his credibility finding, as I understand it, that was wrong in the credibility? Because if the I.J. says, I don't believe one thing the guy says, then the facts that you now suggest are true are not necessarily true. I agree. But the credibility finding isn't supported by substantial evidence. Because if you look closely at the many grounds that the I.J. cites, they either don't exist, they're not, they can't be determined from the record because the record is so incomprehensible and incoherent in places, and either that or the basis that the I.J. cites is not a legitimate ground for an adverse credibility finding. There is only one inconsistency that the I.J. cites that actually has evidence in the record. For example, the fact that his father had left for two years and came back and they only learned of his whereabouts after. The I.J. cites that as a basis not to believe the immigrant, but there's no reasonable fact finder would determine that as a legitimate basis for adverse credibility. The fact that his father, that there's no evidence in the record as to who operated the farm while his father was gone for two years, these facts are not central to his proven evidence of a lack of credibility. The fact that his hair was cut once in 1993 and then he stated again later in his testimony that it was cut when he had to come to the United States. The I.J. cites that as a ground not to believe him. Well, let me ask you another question that's just kind of a little bit off the track. We're really talking about adverse credibility. There were two reasons cited by the I.J. that were not even challenged with the BIA, weren't there? Two reasons cited by the I.J. Two reasons for his incredibility. You might be thinking of the I.J. I don't want to put words in your mouth, but. Well, all I'm suggesting is when I read through, we're looking at adverse credibility and there were two reasons cited by the I.J. that were not challenged at the BIA or challenged even any place along this particular situation, especially at the BIA. For instance, Singh failed to challenge, as I understand, his knowledge regarding the Akali Dal parties and his knowledge about the father's arrest. That wasn't even put in the BIA's brief. But what was put in the BIA's brief is that there is no evidence supporting any of the findings that the I.J. determined. And the briefing, yes. But failing to challenge those particular findings, doesn't that suggest then that if you fail to challenge, not exhausted, end of story? The argument might not have been a perfect argument in the BIA, but the conclusion was that none of the I.J.'s findings were supported by evidence in the record. And it's true that there are a few of his findings that are not explicitly talked about, but these were clearly indirectly at least raised and exhausted in the BIA. I am making exactly the same argument that the Petitioner did in the BIA, which is that none of the I.J.'s findings are supported by sufficient evidence, except for the medical note, which doesn't go to the heart of the claim. Are you suggesting that we should, just because somebody says we're fighting credibility and we don't fight all the issues, that that nonetheless allows you to raise issues in this Court that you don't raise to the BIA? What I'm suggesting is that I'm not bringing up any new legal claims, that the government was on notice that Mr. Singh is challenging every single one of the I.J.'s findings, and that that shouldn't – that should not prejudice him here. The heart of what I'm saying is that the I.J.'s findings are not supported by substantial evidence, and that argument was made in the BIA. The argument was made that except for the medical note, which doesn't go to the heart of the claim, the I.J.'s findings are insubstantial, and that upon closer look at the poor translation, that there's only one inconsistency left standing. And had the I.J. opinion been written as though there were only one inconsistency, then it would give the image of a much less problematic case. So the fact that eight of the nine grounds cited by the I.J. have no evidence in the record is not something that was explicitly worded that way in the BIA, but it doesn't matter because the claim is the same, and the claim is that there's no evidence supporting the determination. What's your best case for the idea that if you don't challenge an issue before the BIA, I nonetheless can review it on appeal? Your Honor, I don't think that there needs to be a case that says that because I think the issues were brought up in the BIA. Complete your thought, and then I want to ask you something else. Okay. Why don't you go ahead. In the record, it says that he's married to an American citizen. Has he applied for adjustment of status? I don't know the answer to that question, but I know the answer. Yes. Well, his determination of the deportation decision has already been made. So I assume that any adjustment of status would be subject to the fact that he was issued as deported and also that he, like, apparently knowingly, frivolously applied for asylum. So under my understanding, Mr. Singh is permanently barred from applying for admission to the United States, whether he is here in the United States or whether he is back in India. I see. Under the statute. Thank you. Thank you. Thank you, Counsel. We'll give you a couple minutes for rebuttal. Okay. Your time is up. Good afternoon. May it please the Court. My name is Linda Chang, and I represent the Attorney General. The Court today should affirm the agency's denial of asylum, withholding of removal, and protection under the Torture Convention as found by the asylum officer, the I.J. and the BIA. Substantial evidence supports the I.J.'s determination that Petitioner, an alleged Sikh separatist recounting events from 1993 to 1995, was not credible based on nine discrepancies in the record that went to the heart of the claim. The individual findings cover all aspects of Petitioner's claim, ranging from the extent of his political involvement to the factual circumstances surrounding the two arrests and beatings at the heart of the claim, to the veracity of the documentary evidence sent to him by his parents. The scope of these findings strengthens the reasonableness of the I.J.'s determination. Just to point out a few inconsistencies, Petitioner testified that he did not receive medical treatment after his first arrest on January 13, 1993. And that's on pages 76, 86, and 87. However, he presents a doctor's note that states that he was treated on January 21, 1993, on page 87 and 88. He admits that this date is correct, on page 87. And this is not a minor inconsistency, as Petitioner's counsel tries to argue, because it goes to the heart of the claim, which surrounds. He only alleges two events that constitute his past persecution. Therefore, this arrest, detention, and beating, and subsequent medical attention he received from that beating, goes to the heart of the claim. Right. But he submitted that the discrepancy actually goes the other way. It would show that he did see that he was beaten. It would support his claim, right? It would support his claim if it was a valid document. However, because it creates another inconsistencies, another inconsistency to the length of his detention, he claims that he was detained for 10 days after his first arrest on page 70, 86, and 102. But this doctor's note, which is Exhibit 9 on page 119, is dated 8 days later. Let me ask you another question about that particular issue. It's my understanding that there were some inconsistencies, and Singh was somewhat aware of those inconsistencies, but I find nothing in the records that suggests that the I.J. addressed Singh's explanations or that the I.J. explained the significance of the inconsistency. And as I understand the statute or the case law, that's what the I.J. should have done. So I guess I'm having a tough time understanding how to help the I.J. when I didn't find any addressing the explanation that Singh gave or the significance of the inconsistency. In that matter, it doesn't seem to me that I can help the I.J., can I? The I.J. does discuss the significance in a way where he discounts the fact that these inconsistencies throughout the testimony and in the application. The reason I'm concerned about that is we have held, as you know, that any alleged inconsistency in dates are really not very important in determining credibility. So I'm trying to figure out where I go to find the explanation in order to help the I.J. That is true of your case law. It is also true in your case law that any one inconsistency that goes to the heart of the claim is enough to support an adverse credibility determination. If there's some explanation. Correct. And in this decision, the I.J. has given nine different inconsistencies to hang his hat on for the I.J. Right. But there are a lot of them that really don't pan out with the record, I think. I mean, I'm just giving you my reaction to it. But, I mean, I think there was a the I.J. was speculating on the authenticity without providing a reason. And as you go through the record carefully, it's I think many, if not all, of the inconsistencies are either explained or don't go to the heart of the claim. I wouldn't say that the I.J. speculated as to the authenticity of the documents before him. There wasn't a report from the forensics department. Therefore, with what he had before him, he had to make a determination. And since they weren't reliable or credible as it conflicted with Petitioner's testimony, he was forced to make a decision, and he decided that it was not reliable and, therefore, fraudulent. He could not have disregarded these documents or given them a credible review. You know, Counsel, I read the transcript. In a lot of cases, I don't read the old transcript. I did in this case, and I was struck with how poor the translation must have been. The answers to so many of the questions were complete non-secreters. So you don't really know what the translator said to Mr. Singh and how he interpreted the question. What the answer was, didn't you find this one of the more problematic transcripts that you had to work with? You know, all of us work with a lot of them, and a lot of them are very straightforward. This one is a very troublesome one. I wouldn't necessarily say that the problems in translation affected the credibility determination because it was still apparent from what was intelligible that these discrepancies existed. Moreover, this is not an issue that Counsel has brought up before to the Board at the appropriate time when it could have been fixed as a procedural defect and, therefore, has waived and exhausted this claim. Let me go back to the documents because you have seemed to concentrate on the documents. It seems to me, given our precedent, that I've got to have something in the record that the IJ finding one allegedly fraudulent document is not enough. We've got to have evidence that the Petitioner knew the document was fraudulent when the other evidence supported his claim. In this particular situation, this Petitioner did not think the document was fraudulent. In fact, he admitted the document was not made contemporaneously and contained incorrect information. His only explanation, he didn't know what it said. So given that, I then look for the IJ's explanation again. How does the IJ explain what he finds and what this deals with credibility? And I, again, found no explanation from the IJ. How does it deal with credibility? Because Singh doesn't say the document is made at the time. It was made when it was supposed to be. He says it's made after the fact and it was sent to me thereafter. And had I known about it, I would have tried to do something. I'm just giving you what I have. So, again, I'm looking, what does the IJ say to explain his credibility finding? And I find nothing. First, I would say that willful blindness is not a defense to submitting any and all documents to the court to let them sort it out on their own. Right. But let me interrupt you there for a second, because I think I'm probably headed in the same direction that Judge Smith is. And here's the document that apparently is the key document. And so the IJ asks him about the document. And here's the answer. Yes, I admit that, but I don't know. And the paper is over there. I brought them like that and I had it indiscernible by extracting them from the paper. How are we to review that? I can't make any sense out of that, nor can I understand, because the IJ didn't make an explanation of why that wasn't an adequate explanation of what the document was about. I mean, basically, you're accusing this, well, the IJ is, you're not, of fraud. But when you look down to what exactly the document is and what his explanation is, it's very difficult to see from the record that it's a clear-cut case. I understand your concern. However, the regulations do put the burden of proof and persuasion on the Petitioner to present reliable and credible evidence to support his claim. No, I understand that. But what Judge Smith is asking, where's the IJ's explanation of this so that we can, as an appellate body, can review it? It may not be that clear in the IJ's decision. But based on the evidence he had before him. Well, I know. But if you say the evidence is before him, that's every case. I mean, we can only review what we see in the record and what we see in the IJ's explanation. And, you know, if you were the IJ, I'm sure you would have been clear as a bell on what you put down. But it's difficult in this case. I'm saying this only to give you an opportunity to respond to our concerns. Thank you. I think the IJ also looked at the rest of his testimony and the fact that he did not present credible testimony up to that point. And even if you take his medical note as credible, it creates a different scenario, a different situation. And therefore, there are two different accounts already presented by Petitioner. And that cannot withhold. Well, I mean, for example, let's take another one. You've got the – this is about when he was arrested. And the IJ says he was inconsistent. But here's what he says. The police arrested indiscernible. When he had been arrested, they would come and ask me, do you know where your father is? And we didn't know where he was. And he says that's an inconsistent statement. But much of it's indiscernible. I mean, it's hard to judge that on the basis of this record. I do understand. And, however, that issue with his father's whereabouts was not contested before the Board. Well, so, I mean, it's – I may differ from my colleague. You know, we do have cases that say if you raise the general issues about credibility as long as the issue is presented before the Board, that may be sufficient for exhaustion. I mean, if it's – if that issue is deemed exhausted, then where does that leave you? You know? I mean, we'd have to deal with that on the merits, right? If we – if we hold that it was sufficiently exhausted for purposes of our Court. And if you deem that the evidence then compels the conclusion that the petition is credible. Let me ask you this. If we find that, based on the failure for explanation, that there isn't substantial evidence to support the negative credibility finding, where do we go? Only if you determine that the evidence before you compels a contrary conclusion may you then remand it for merits on asylum. Right. I think he was asking, is the government's position that this – assuming that his testimony is true, do you think that he qualifies for asylum or not? I can't speculate on that because the agency never made a determination on the merits. However, I would say that given the nine inconsistencies, even if there are some that are not supported or explained thoroughly, there is enough in there to support an adverse credibility determination by the IJ. Would the government suggest that we remand for a renewed credibility determination? Is there any law to suggest that? No, there isn't. And I believe that there is enough in the record as it stands to sustain the adverse credibility determination. Okay. Any further questions? I think we have your argument at hand. Okay. Thank you. Thank you very much for your argument. Thank you. And we'll give you a couple minutes for rebuttal. Thank you, Your Honors. Briefly, I'd like you to just consider the breakdown in communication that happened in this case and that even through the poorly translated and bad record, Mr. Singh did testify consistently with his declaration and was able to communicate the elements, the core elements of his claim. Well, it's kind of hard to tell given this translation. I mean, it really is. When we can't make out the answers, it's hard to judge. I agree. It's difficult. But the very little bits that are coherent and seem to be in proper English and proper translation are consistent with his declaration. And that Mr. Singh has a wife and child and has been living here, and that if this Court were to affirm the IJ's determination, the unexplained determination that Mr. Singh knowingly and frivolously submitted a fraudulent claim for asylum, which was the IJ's finding, even though there is no evidence that Mr. Singh knew that any part of his claim was fraudulent, then he will be permanently barred from returning to the United States. Now, to respond to the government's argument, the intelligent parts of his testimony are consistent with his declaration, and just based on his declaration, he is eligible for asylum. But this is something that the BIA can determine on remand when this Court reverses the IJ's credibility determination. Whether he received the IJ's determination. Counselor? Yes. Could I ask you, if the frivolous finding were removed, is he then eligible to apply for adjustment of status? I believe that the bar is five years. If he is ordered deported. Yes. But did not file a fraudulent application, then the statute under 1182, Section 1182, says that he is barred for five years and not permanently. If the finding of the fraudulent application stands, then he's permanently barred from ever returning to the United States or applying for admission. Now, the government seems to concede that the one inconsistency that this Court that they're requesting this Court determine exists is the fact that Mr. Singh testified he did not receive medical treatment, even though he submitted a medical record that he did not read and did not understand, but that documented treatment that he received 10 years ago, does not go to the heart of his claim. Whether or not he received medical treatment after he was deported, I remember that, and how long his detention was, is not the core of his asylum claim. And furthermore, the fact that he did not testify, that the fact that he testified he did not receive treatment is, does not bolster his asylum claim. There's no incentive for him to testify inconsistently with a medical record that he submitted. If he had knowingly submitted those documents and knew that they were fraudulent, it would have been in his best interest to lie and to lie consistently with the medical record. It just doesn't make sense that this person, who seems to be testifying honestly, and even when confronted with the medical record, says, I just, does not falter and doesn't change his testimony, and just says, I simply did not remember it, that it's not credible that Mr. Singh had submitted a fraudulent application, and the IJ's determination must be specific and cogent to this. I understand your argument on that, but I think the government has a point in the sense that in some cases, if you're just submitting fraudulent documents, even if it's the documents, even if your testimony is, say, less favorable than the documents, that it just indicates that there is an attempt to defraud the court. I mean, that's the government's argument, is it doesn't make any difference whether it helps him or hurts him. At least that's what I gather the government's saying. True. But that is the government's argument. But it does make a difference that Mr. Singh didn't know, that there's no evidence that he knew that the documents were fraudulent. And the Yemeni-Behr case is strong precedent that says that if there is no knowledge of the fraud of the documents and the testimony is otherwise consistent internally, which it was in this case, that there is no grounds for an adverse credibility determination. And that's the this case is precisely the case, as was the case in Yemeni-Behr, where there was a medical record affirmatively found upon analysis to be counterfeit that the immigrant did not know about, but that was supposed to document medical treatments she received after being tortured. In that case, the Court said and held that the – I'm sorry, I'm over my time. Let's go ahead and finish your thought, though. In that case, the Court held that that was not a ground for adverse credibility, and that's exactly what we have here. Thank you. Thank you, counsel. Thank you both for your arguments. The case just heard will be submitted for decision. The next case on the oral argument calendar is United States v. Singletary. And, Judge Fletcher, you'll just have to let me know if you want to take a break. Usually, I would consult here, but – I think maybe after this case, we might take a very short break. All right. Just for those people who are arguing the next case and those following, we'll take a 10-minute recess after the argument in this case. But you may proceed.
judges: B. Fletcher, Thomas, N.R. Smith